UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
BINGHAMTON DIVISION

| | |
|---|---|
| **William A. Jacobson**, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**Mary T. Bassett**, in her official capacity as Acting Commissioner of the New York Department of Health,<br><br>Defendant. | Case No. 3:22-CV-33 (MAD/ML) |

## CLASS-ACTION COMPLAINT

The New York Department of Health recently established guidelines for medical providers to give automatic priority to "non-whites" and individuals with "Hispanic/Latino ethnicity" in distributing life-saving COVID-19 treatments. *See* Memorandum of December 27, 2021 (attached as Exhibit 1). Under these guidelines, non-Hispanic white individuals who test positive for COVID-19 are ineligible for oral antiviral treatments unless they also demonstrate "a medical condition or other factors that increase their risk for severe illness." *Id*. at 2. But similarly situated "non-white" or "Hispanic/Latino" individuals are *automatically* eligible for these life-saving antiviral treatments—regardless of the individual's medical situation—because New York has proclaimed that one's status as a racial or ethnic minority is itself a "risk factor" for severe illness from COVID-19, even if the individual has no pre-existing condition that would make him more susceptible to harm from COVID-19. In the words of the Department of Health:

> Non-white race or Hispanic/Latino ethnicity should be considered a risk factor, as longstanding systemic health and social inequities have

contributed to an increased risk of severe illness and death from COVID-19.

*Id.* at 2. The result is that a "non-white" or "Hispanic/Latino" individual who tests positive for COVID-19 automatically qualifies for these life-saving oral antiviral treatments, while an identically situated non-Hispanic/Latino white individual is ineligible for these treatments unless he demonstrates a "medical condition" or "risk factor" that increases his risk for severe illness from COVID-19. New York's use of racial preferences in the distribution of COVID-19 treatments is patently unconstitutional and should be immediately enjoined.

Using a patient's skin color or ethnicity as a basis for deciding who should receive lifesaving medical treatment is appalling. And directing medical professionals to award or deny medical care based on immutable characteristics such as skin color, without regard to the actual health condition of the individual who is seeking these antiviral treatments, is nothing more than an attempt to establish a racial hierarchy in the provision of life-saving medicine. Worse still, New York's racial preferences ignore the obvious race-neutral alternative policy of making antiviral treatments available to patients of *any* race who can demonstrate risk factors, such as advanced age, obesity, a compromised immune system, or other medical conditions.

## JURISDICTION AND VENUE

1. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

2. Venue is proper because a substantial part of the events giving rise to the claims occurred in this district and division. *See* 28 U.S.C. § 1391(b).

## PARTIES

3. Plaintiff William A. Jacobson is a citizen and resident of Tompkins County, New York, where he teaches law at Cornell University.

4.  Defendant Mary T. Bassett is the Acting Commissioner of the New York Department of Health. She can be served at the New York State Department of Health, Corning Tower, Empire State Plaza, Albany, New York, 12237. Plaintiff sues her in her official capacity.

## STATEMENT OF FACTS

5.  On December 27, 2021, the New York Department of Health issued a memorandum to health-care providers and health-care facilities entitled "COVID-19 Oral Antiviral Treatments Authorized and Severe Shortage of Oral Antiviral and Monoclonal Antibody Treatment Products." Its stated purpose is to make health-care providers and facilities in New York "aware of information about available COVID-19 outpatient therapeutics, including newly authorized oral antiviral treatments." A copy of this memorandum is attached as Exhibit 1.

6.  The memorandum defines a patient's "eligibility" for these oral antiviral treatments, and it states as follows:

> Oral antiviral treatment is authorized for patients who meet all the following criteria:
>
> - Age 12 years and older weighing at least 40 kg (88 pounds) for Paxlovid, or 18 years and older for molnupiravir
> - Test positive for SARS-CoV-2 on a nucleic acid amplification test or antigen test; results from an FDA-authorized home-test kit should be validated through video or photo but, if not possible, patient attestation is adequate
> - Have mild to moderate COVID-19 symptoms
>   ◦ Patient cannot be hospitalized due to severe or critical COVID-19
> - Able to start treatment within 5 days of symptom onset
> - *Have a medical condition or other factors* that increase their risk for severe illness.
>   ◦ *Non-white race or Hispanic/Latino ethnicity should be considered a risk factor*, as longstanding systemic health and social inequities have contributed to an increased risk of severe illness and death from COVID-19

Exhibit 1 at p. 2 (emphasis added).

7. The memorandum directs health care providers and health care facilities within New York to "adhere" to the Department's "prioritization" instructions because of the "severe shortage of oral antiviral and monoclonal antibody treatment products."

8. Relatedly, on December 29, 2021, the New York Department of Health issued further guidance on the matter in a document titled "Prioritization of Anti-SARS-CoV-2 Monoclonal Antibodies and Oral Antivirals for the Treatment of COVID-19 During Times of Resource Limitations." A copy of this guidance is attached as Exhibit 2. The guidance has a chart that advises medical providers on how to make decisions about patients within certain groups—including based on the number of risk factors present for an individual within each group—and notes that "[n]on-white race or Hispanic/Latino ethnicity should be considered a risk factor, as longstanding systemic health and social inequities have contributed to an increased risk of severe Illness and death from COVID-19." Exhibit 2 at p. 3.

9. New York's policy creates a racial hierarchy in the distribution of life-saving COVID-19 medication. Non-white and Hispanic/Latino individuals who test positive for COVID-19 automatically qualify for oral antiviral treatments, while an identically situated non-Hispanic/Latino white individual is ineligible unless he demonstrates a "medical condition" or "risk factor" that increases his risk for severe illness from COVID-19.

10. New York's use of racial preferences to distribute COVID-19 treatments violates the Constitution and numerous federal statutes.

11. Due to the highly contagious Omicron variant, the number of Americans contracting COVID-19 is skyrocketing. "As of January 12, 2022, the current 7-day moving average of daily new cases (782,766) increased 33.2% compared with the previous 7-day moving average (587,723)." Centers for Disease Control and Prevention,

*COVID Data Tracker Weekly Review*, https://www.cdc.gov/coronavirus/2019-ncov/covid-data/covidview/index.html (last accessed January 16, 2022). As the FDA Commissioner recently testified, "most people are going to get covid." Aaron Blake, '*Most People Are Going to Get Covid*': A Momentous Warning at a Senate Hearing, Washington Post (Jan. 11, 2022), https://wapo.st/3fqyxVt.

12. New York State has been averaging more than 60,000 new COVID cases per day since January 1. Tompkins County, with a population of just over 100,000, has recently been averaging more than 200 cases per day.

13. Plaintiff does not qualify under the New York guidelines as "[n]on-white race or Hispanic/Latino ethnicity," and he sues on behalf of a plaintiff class consisting of individuals in New York State who do not qualify under the New York guidelines as "[n]on-white race or Hispanic/Latino ethnicity."

14. Plaintiff is especially at risk for contracting COVID-19 because he teaches at Cornell University, which recently had a severe outbreak despite its extensive COVID protocols. Madeline Rosenberg and Anil Oza, *COVID-19 Update: Cornell Reports Record--High 469 Active Student Cases*, Cornell Sun (Dec. 13, 2021), https://bit.ly/3GBXrx5.

15. Plaintiff is suffering injury in fact from New York's racially discriminatory policy because he and other non-Hispanic/Latino white individuals cannot obtain oral antiviral treatments in New York when they contract COVID-19 unless they demonstrate a "medical condition or other factors that increase their risk for severe illness" from the virus, while non-white and Hispanic/Latino residents of New York are not required to make such a showing. This discriminatory treatment inflicts injury in fact, regardless of whether Plaintiff and his fellow class members would ultimately obtain the antiviral treatments in the absence of New York's racially discriminatory policy. *See Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993) ("When the government erects a barrier that makes it

more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.").

16. New York's policy also injures Plaintiff and his fellow class members by subjecting them to an increased risk of serious illness or death when they acquire COVID-19. *See Massachusetts v. EPA*, 549 U.S. 497, 525 n.23 (2007) ("[E]ven a small probability of injury is sufficient to create a case or controversy—to take a suit out of the category of the hypothetical—provided of course that the relief sought would, if granted, reduce the probability") (quoting *Village of Elk Grove Village v. Evans*, 997 F.2d 328, 329 (7th Cir. 1993)); *Baur v. Veneman*, 352 F.3d 625, 633 (2d Cir. 2003) ("[C]ourts of appeals have generally recognized that threatened harm in the form of an increased risk of future injury may serve as injury-in-fact for Article III standing purposes.").

17. Finally, New York's policy injures Plaintiff by inflicting emotional and psychological harm on Plaintiff (and others) who are facing increased risk of harm from the pandemic on account of New York's racially discriminatory policies. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2211 (2021) ("[A] plaintiff's knowledge that he or she is exposed to a risk of future physical, monetary, or reputational harm could cause its own current emotional or psychological harm.").

18. All of these injuries are fairly traceable to the racial preferences enforced by Acting Commissioner Bassett, and they will be redressed by declaratory and injunctive relief that prohibits the Commissioner from using racial criteria in determining eligibility for COVID-19 oral antiviral treatments.

**Claim 1:    The Department's Racial Preferences Violate The Fourteenth Amendment**

19.   The Fourteenth Amendment prohibits state officials from discriminating on account of race or ethnicity. *See Shaw v. Hunt*, 517 U.S. 899, 907 (1996) ("Racial classifications are antithetical to the Fourteenth Amendment, whose central purpose was to eliminate racial discrimination emanating from official sources in the States.").

20.   The New York Department of Health is violating the Fourteenth Amendment by discriminating on account of race in determining eligibility for COVID-19 oral antiviral treatments.

21.   The Department's policy fails any level of constitutional scrutiny. Even if the Department has an interest in ensuring that only the most at-risk patients will receive scarce antiviral treatments, the policy's racial preferences are not closely or narrowly tailored to achieving that interest. The Department could have effectively pursued the same goals through the obvious race-neutral alternative of requiring *all* patients to have enumerated medical conditions or risk factors in order to receive antiviral treatments.

22.   The Court should declare the Department's racial preferences unconstitutional and permanently enjoin the Acting Commissioner from enforcing them.

23.   Plaintiff brings this claim under the causes of action established in 42 U.S.C. § 1983 and the Declaratory Judgment Act.

**Claim 2:    The Department's Racial Preferences Violate Title VI**

24.   Title VI of the Civil Rights Act of 1964 prohibits discrimination on the grounds of race, color, or national origin in any program that receives federal funds. *See* 42 U.S.C. § 2000d.

25.   The New York Department of Health is violating Title VI by discriminating on account of race in programs that receive federal funds.

26. The Court should declare the Department's racial preferences violate Title VI and permanently enjoin the Acting Commissioner from enforcing them in any program that received federal funds.

27. Plaintiff brings this claim under the causes of action in 42 U.S.C. § 1983, the Declaratory Judgment Act, and Title VI.

**Claim 3:    The Department's Racial Preferences Violate Section 1557 Of The Affordable Care Act**

28. Section 1557 of the Affordable Care Act prohibits racial discrimination in any health program or activity that receives federal financial assistance. *See* 42 U.S.C. § 18116.

29. The policy announced by the New York Department of Health violates section 1557 by inducing health-care providers that receive federal funds to discriminate on account of race when determining a patient's eligibility for life-saving medicine.

30. The Court should declare the Department's racial preferences violate section 1557 and permanently enjoin the Acting Commissioner from enforcing them against any health care provider that receives federal funds.

31. Plaintiff brings this claim under the causes of action in 42 U.S.C. § 1983 and the Declaratory Judgment Act, and 42 U.S.C. § 18116(a).

## DEMAND FOR RELIEF

32. Plaintiff respectfully requests that the court:

   a.  certify a class of individuals in New York State who do not qualify under the New York health department guidelines for distribution of COVID-19 therapeutics as "[n]on-white race or Hispanic/Latino ethnicity";

   b.  award the declaratory relief described in paragraphs 22, 26, and 30;

c. enter a preliminary and permanent injunction that restrains Acting Commissioner Bassett and her successors from implementing and enforcing any discriminatory racial preferences in the Department's programs;

d. award costs and attorneys' fees under 42 U.S.C. § 1988;

e. award all other relief that the Court may deem just, proper, or equitable.

Respectfully submitted.

/s/ James P. Trainor

Gene P. Hamilton*
Virginia Bar No. 80434
Vice-President and General Counsel
America First Legal Foundation
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

James P. Trainor
New York Bar No. 505767
Trainor Law PLLC
2452 U.S. Route 9
Malta, New York 12020
518-899-9200 (phone)
518-899-9300 (fax)
jamest@trainor-lawfirm.com

Jonathan F. Mitchell*
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Jeffrey Harris*
Michael Connolly*
James Hasson*
Consovoy McCarthy PLLC
1600 Wilson Boulevard, Suite 700
(703) 243-9423
Arlington, VA 22209
jeff@consovoymccarthy.com
mike@consovoymccarthy.com
james@consovoymccarthy.com

Adam K. Mortara*
Illinois Bar No. 6282005
Lawfair LLC
125 South Wacker Drive Suite 300
Chicago, Illinois 60606
(773) 750-7154
adam@mortaralaw.com

* *pro hac vice* applications forthcoming

*Counsel for Plaintiff and the Proposed Class*

Dated: January 16, 2022