# TRAINOR LAW PLLC
### Attorneys at Law
2452 US Route 9, Suite 203, Malta, NY 12020
Ph: 518-899-9200/Fax: 518-899-9300

James P. Trainor, Esq., Principal
Ryan P. Pezzulo, Esq., Senior Associate
Diana C. DeSanto, Esq., Associate
Elizabeth A. Marcuccio, Esq., CPA, Of Counsel

Danielle N. Phillips, Paralegal
Corina L. Boni, Paralegal
Dee L. Darling, Administrative Professional

www.trainor-lawfirm.com

January 28, 2022

The Honorable Mae D'Agostino
United States District Court for the Northern District of New York
445 Broadway, Courtroom 5
Albany, New York 12207

**RE:** *Jacobson v. Bassett*, **No. 3:22-cv-33 (MAD/ML)**

Dear Judge D'Agostino:

Pursuant to Your Honor's Rules, Plaintiff William A. Jacobson requests permission to file a motion for a preliminary injunction for class certification on an accelerated briefing schedule.

**Factual Background**. On December 27, 2021, the New York Department of Health issued a memorandum to healthcare providers and healthcare facilities entitled "COVID-19 Oral Antiviral Treatments Authorized and Severe Shortage of Oral Antiviral and Monoclonal Antibody Treatment Products." Compl. Ex. 2. The Department announced that Paxlovid and Molnupiravir had received Emergency Use Authorization from the U.S. Food and Drug Administration and that these antiviral therapies significantly reduce the risk of hospitalization and death from COVID-19. *Id*. at 1–2. The Department warned, however, that "[w]hile the availability of oral antivirals for treatment of COVID-19 is an important milestone, it comes at a time of a significant surge in cases and reduced effectiveness of existing therapeutics due to the omicron variant, which is now the predominant variant nationally and estimated by the [CDC] to account for over 90% of cases in New York." *Id*. at 1.

Given these "severe resource limitations," *id*. at 1, the Department directed health care providers and health care facilities to "prioritize treatment for patients at highest risk for severe COVID-19 until more product becomes available," *id*. at 2. To be eligible, patients must meet several criteria, including "hav[ing] a medical condition or other factors that increase their risk for severe illness." *Id*. The directive then stated that being of "*Non-white or Hispanic/Latino ethnicity should be considered*

*a risk factor*" that makes one eligible for oral antibody treatments. *Id.* (emphasis added). Thus, under the Policy, there is a racial hierarchy in the distribution of life-saving COVID-19 medication. Non-white and Hispanic/Latino individuals who test positive for COVID-19 *automatically qualify* for oral antiviral treatments, while identically situated non-Hispanic/Latino white individuals are ineligible unless they demonstrate a "medical condition" or "risk factor" that increases their risk for severe illness from COVID-19.

Plaintiff William Jacobson is a United States citizen and a resident of New York. Plaintiff does not qualify under the New York guidelines as "[n]on-white race or Hispanic/Latino ethnicity," and he sues on behalf of a plaintiff class consisting of individuals in New York State who do not qualify under the New York guidelines as "[n]on-white race or Hispanic/Latino ethnicity." Plaintiff seeks class certification and a preliminary injunction restraining Acting Commissioner Bassett and her successors from implementing or enforcing racial preferences in the Department's programs.

**A Preliminary Injunction Is Appropriate**. Plaintiff is likely to succeed on the merits of his claims under the Equal Protection Clause and multiple federal anti-discrimination statutes. The Department's explicit racial preferences, like all "racial classifications," must be "analyzed by a reviewing court under strict scrutiny." *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (2000). The Policy cannot come close to satisfying that exacting standard because there are obvious race-neutral alternatives that the Department failed to pursue. Most obviously, the Department could have established objective medical criteria or risk factors for *all* patients regardless of race to determine who is eligible for antiviral drugs. For example, it is well-established that advanced age, obesity, a weakened immune system, and several other chronic medical conditions such as cancer or lung disease make an individual more likely to face serious illness or hospitalization from COVID-19. By applying the same neutral, objective medical criteria to all patients, the Department could accomplish its goals of reserving treatment for the most at-risk patients without employing racial classifications.

The other preliminary injunction factors—irreparable injury, the balance of equities, and the public interest—also overwhelmingly favor enjoining the Department's racial classifications. "[A] presumption of irreparable injury flows from a violation of constitutional rights." *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 636 (2d Cir. 2020). Moreover, courts have held time and again that

plaintiffs suffer irreparable harm when they lose access to a valuable benefit or are forced to compete under more onerous terms because of a racial classification. *See, e.g., Greer's Ranch Café v. Guzman*, No. 4:21-cv-651, 2021 WL 2092995, at *8 (N.D. Tex. May 18, 2021).

And the balance of equities is not close. The Department cannot plausibly contend that it will be injured if the express racial preferences in its policy are enjoined. Even without those preferences, the Department can of course continue to allocate antiviral drugs to all patients—regardless of race—based on objective medical risk factors that can identify which patients most need these lifesaving treatments. Courts have also repeatedly held that there is always a strong public interest in enjoining unconstitutional and unlawful government actions. *See Agudath Israel of Am.*, 983 F.3d at 636.

**Class Certification Is Also Appropriate**. Plaintiff seeks declaratory and injunctive relief on behalf of a class of all individuals who do not qualify under the New York Department of Health guidelines for distribution of COVID-19 therapeutics as "[n]on-white race or Hispanic/Latino ethnicity." The proposed class easily meets the requirements of Rule 23. The number of affected class members runs well into the millions, and commonality and typicality are satisfied because each class member is encountering unlawful racial discrimination at the hands of the New York government. Finally, Mr. Jacobson is an adequate class representative and has no conceivable conflicts of interest with his fellow class members. And because the plaintiff seeks certification under Rule 23(b)(2), there is no need to make the "predominance" and "superiority" showings required for (b)(3) class actions.

Plaintiff requests expedited briefing on these motions. The highly contagious Omicron variant is spreading rapidly in New York—averaging more than 60,000 new cases per day—and public health officials have warned that "most people are going to get covid." Compl. ¶¶11-12. Injunctive relief is needed now. Accordingly, Plaintiff requests that the Defendant be ordered to file its opposition no later than seven days after Plaintiff files his motions.

        Respectfully submitted,

        */s/ James P. Trainor*
        Counsel for Plaintiff William A. Jacobson

## CERTIFICATE OF SERVICE

I certify that on January 28, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will automatically send e-mail notification to all counsel of record.

Because the Defendant has not yet entered an appearance, I am also serving the foregoing by certified mail, return receipt requested, at the address below:

>Acting Commissioner Mary T. Bassett
>New York State Department of Health
>Corning Tower, Empire State Plaza
>Albany, New York, 12237

>/s/ James P. Trainor
>James P. Trainor
>New York Bar No. 505767
>Trainor Law PLLC
>2452 U.S. Route 9
>Malta, New York 12020
>518-899-9200 (phone)
>jamest@trainor-lawfirm.com