**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**WILLIAM A. JACOBSON,** *on behalf*
*of himself and others similarly situated,*

                              **Plaintiff,**

    **vs.**                                                  **3:22-CV-00033**
                                                            **(MAD/ML)**

**MARY T. BASSETT,** *in her official*
*capacity as Acting Commissioner of*
*the New York Department of Health,*

                              **Defendant.**

---

**APPEARANCES:**                              **OF COUNSEL:**

**TRAINOR LAW PLLC**                          **JAMES P. TRAINOR, ESQ.**
2452 US Route 9 - Suite 203
Malta, New York 12020
Attorneys for Plaintiff

**LAWFAIR LLC**                               **ADAM K. MORTARA, ESQ.**
125 S. Wacker Dr. - Suite 300
Chicago, Illinois 60606
Attorneys for Plaintiff

**AMERICA FIRST LEGAL**                       **GENE HAMILTON, ESQ.**
**FOUNDATION**
300 Independence Avenue SE
Washington, District of Columbia 20003
Attorneys for Plaintiff

**CONSOVOY MCCARTHY PLLC**                    **J. MICHAEL CONNOLLY, ESQ.**
1600 Wilson Blvd. - Suite 700                **JAMES F. HASSON, ESQ.**
Arlington, Virginia 22209                     **JEFFREY M. HARRIS, ESQ.**
Attorneys for Plaintiff

**MITCHELL LAW PLLC**                         **JONATHAN F. MITCHELL, ESQ.**
111 Congress Avenue - Suite 400
Austin, Texas 78701
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK STATE**
**ATTORNEY GENERAL**                          **ADRIENNE J. KERWIN, AAG.**

The Capitol
Albany, New York 12224
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff William A. Jacobson commenced this action on January 16, 2022, against

Defendant Mary T. Bassett, in her official capacity as Acting Commissioner of the New York

Department of Health ("DOH"), alleging equal protection claims under the Fourteenth

Amendment, Title VI of the Civil Rights Act of 1964, and Section 1557 of the Affordable Care

Act. *See* Dkt. No. 1. Currently before the Court is Plaintiff's motions for a preliminary

injunction, *see* Dkt. No. 34, and to certify a class, *see* Dkt. No. 33, and Defendant's cross motion

to dismiss the complaint, *see* Dkt. No. 42. For the reasons that follow, this Court concludes that it

lacks subject matter jurisdiction over this action and Defendant's cross motion to dismiss the

complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure is granted.

### II. BACKGROUND

According to Plaintiff's complaint, on December 27, 2021, the DOH issued a

memorandum to health-care providers and health-care facilities entitled "COVID-19 Oral

Antiviral Treatments Authorized and Severe Shortage of Oral Antiviral and Monoclonal

Antibody Treatment Products." Dkt. No. 1 at ¶ 5; *see also* Dkt. No. 1-1. The stated purpose of

this memo was to make health-care providers and facilities "aware of information about available

COVID-19 outpatient therapeutics, including newly authorized oral antiviral treatments." Dkt.

No. 1-1 at 1. The memo provides that a patient is authorized for oral antiviral treatment when

they have met all the following criteria:

       • Age 12 years and older weighing at least 40 kg (88 pounds) for
       Paxlovid, or 18 years and older for molnupiravir
       • Test positive for SARS-CoV-2 on a nucleic acid amplification test
       or antigen test; results from an FDA-authorized home-test kit
       should be validated through video or photo but, if not possible,
       patient attestation is adequate
       • Have mild to moderate COVID-19 symptoms
           o Patient cannot be hospitalized due to severe or critical
            COVID-19
       • Able to start treatment within 5 days of symptom onset
       • Have a medical condition or other factors that increase their risk
       for severe illness.
           o *Non-white race or Hispanic/Latino ethnicity should be*
            *considered a risk factor, as longstanding systemic health*
            *and social inequities have contributed to an increased risk*
            *of severe illness and death from COVID-19*

*Id.* at 2 (emphasis added). The memo instructs health-care providers and facilities to "adhere to

[DOH's] guidance on prioritization of high-risk patients for anti-SARS-CoV-2 therapies during

this time of severe resource limitations." *Id.* at 1.

      Two days later, on December 29, 2021, DOH issued a memorandum entitled

"Prioritization of Anti-SARS-CoV-2 Monoclonal Antibodies and Oral Antivirals for the

Treatment of COVID-19 During Times of Resource Limitations." Dkt. No. 1-2 at 1. That

memorandum provided that, "[i]n times of limited supplies of monoclonal antibodies (mAbs) and

oral antivirals (OAVs), providers should prioritize patients eligible for treatment based on their

level of risk for progressing to severe COVID-19" and "the most efficacious products should be

prioritized for patients with the highest risk for hospitalization and death." *Id.* The memorandum

instructs readers to assign patients to a risk group within a tiered table based on certain factors,

including the patients age, the presence of risk factors, and vaccination status. *See id.* at 2. The

memorandum then recommends prioritization, where necessary, within those risk groups based on

similar considerations, including the number of a patient's risk factors. *See id.* Finally, the

memorandum provides that "[n]on-white race or Hispanic/Latino ethnicity should be considered a

risk factor, as longstanding systemic health and social inequities have contributed to an increased risk of severe illness and death from COVID-19." *Id.* at 3.

The complaint asserts that the DOH's December 27, 2021 and December 29, 2021 memoranda (hereinafter, the "Guidance") "create[] a racial hierarchy in the distribution of life-saving COVID-19 medication" where "[n]on-white and Hispanic/Latino individuals who test positive for COVID-19 automatically qualify for oral antiviral treatments, while an identically situated non-Hispanic/Latino white individual is ineligible unless he demonstrates a 'medical condition' or 'risk factor' that increases his risk for severe illness from COVID-19." Dkt. No. 1 at ¶ 9. Plaintiff, a law professor at Cornell University who "does not qualify under the Guidance as '[n]on-white race or Hispanic/Latino ethnicity,'" seeks to bring this action on behalf of a class consisting of all "individuals in New York State who do not qualify under the [Guidance] as '[n]on-white race or Hispanic/Latino ethnicity.'" *Id.* at ¶ 13. Plaintiff requests a permanent injunction enjoining Defendant from implementing and enforcing the race-related risk factor policy in the Guidance for any program or health care provider that receives federal funds. *See id.* at ¶¶ 22, 26, 30, 32(c).

Plaintiff now argues that his motion for a preliminary injunction should be granted because he is likely to prevail on the merits of each of his claims, he has suffered irreparable harm as a result of the Guidance, and the balance of harms and the public interest weigh in favor of injunctive relief. *See* Dkt. No. 34-1. Plaintiff also argues that his motion for class certification should be granted because the proposed class satisfies the requirements of Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure. *See* Dkt. No. 33-1. Defendant opposes both motions. *See* Dkt. Nos. 42, 43. Defendant also cross-moves to dismiss the complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction, and under Rule

12(b)(6) for failure to state a claim. *See* Dkt. No. 42. Plaintiff opposes the cross motion. *See*

Dkt. No. 47.

### III. DISCUSSION

**A.      Defendant's Cross Motion to Dismiss**[1]

*1. Standard of Review*

When a party moves to dismiss a claim pursuant to Federal Rule of Civil Procedure

12(b)(1), "the movant is deemed to be challenging the factual basis for the court's subject matter

jurisdiction." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993) (citations

omitted). For the purposes of such a motion, "general factual allegations of injury resulting from

the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general

allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quotation omitted). However, "the allegations

in the complaint are not controlling, and only uncontroverted factual allegations are accepted as

true." *Id.* (citations omitted). Both parties are permitted to use affidavits and other pleading

materials to support and oppose the motion to dismiss for lack of subject matter jurisdiction. *See*

*Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted). "Furthermore,

'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the

pleadings inferences favorable to the party asserting it.'" *Gunst v. Seaga*, No. 05-CV-2626, 2007

WL 1032265, *2 (S.D.N.Y. Mar. 30, 2007) (quoting *Shipping Fin. Servs. Corp. v. Drakos*, 140

F.3d 129, 131 (2d Cir. 1998)); *see also State Employees Bargaining Agent Coal. v. Rowland*, 494

---

[1] The Court addresses Defendant's cross motion to dismiss under Rule 12(b)(1) first because, if the Court lacks subject matter jurisdiction over this action, it cannot reach the merits of the case. *See Sinochem Intern. Co. Ltd. v. Malaysia Intern. Ship. Corp.*, 549 U.S. 422, 430-31 (2007).

F.3d 71, 77 n.4 (2d Cir. 2007) (holding that, in a motion to dismiss for lack of subject matter jurisdiction, a court "may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits").

### 2. Subject Matter Jurisdiction - Standing

"It is axiomatic that federal courts are courts of limited jurisdiction and may not decide cases over which they lack subject matter jurisdiction," *Lyndonville Sav. Bank & Tr. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000), and "standing 'is perhaps the most important of the jurisdictional doctrines.'" *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (quotation omitted). If a court does not have subject matter jurisdiction, the action must be dismissed. Fed. R. Civ. P. 12(h)(3); *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 251 (2d Cir. 2008) ("Appellants' motion for a preliminary injunction should therefore have been dismissed for lack of jurisdiction, rather than on the ground that appellants are unlikely to succeed on the merits of their action"). The plaintiff, as the party invoking the court's jurisdiction, bears the burden of establishing standing. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).

"It has been established by a long line of cases that a party seeking to invoke a federal court's jurisdiction must demonstrate three things: (1) 'injury in fact,' ... ; (2) a causal relationship between the injury and the challenged conduct ... ; and (3) a likelihood that the injury will be redressed by a favorable decision." *N.E. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 663 (1993) (quotations omitted) ("*General Contractors*").

### a. Injury in Fact

In order to establish an injury in fact, a plaintiff must show an invasion of a legally protected interest that is "'(a) concrete and particularized, and (b) actual or imminent, not

conjectural or hypothetical.'"  *Id.*  "[A] grievance that amounts to nothing more than an abstract

and generalized harm to a citizen's interest in the proper application of the law does not count as

an 'injury in fact.'"  *Carney v. Adams*, 141 S. Ct. 493, 498 (2020).  In cases where "the

government erects a barrier that makes it more difficult for members of one group to obtain a

benefit than it is for members of another group, a member of the former group seeking to

challenge the barrier need not allege that he would have obtained the benefit but for the barrier in

order to establish standing."  *General Contractors*, 508 U.S. at 666.  Thus, "[t]he 'injury in fact' in

an equal protection case of this variety is the denial of equal treatment resulting from the

imposition of the barrier, not the ultimate inability to obtain the benefit."  *Id.* (citation omitted).

However, a plaintiff must still show that the alleged "harms are 'imminent' or 'certainly

impending.'"  *MGM Resorts Int'l Glob. Gaming Dev., LLC v. Malloy*, 861 F.3d 40, 46-47 (2d Cir.

2017).  In other words, the plaintiff challenging such a barrier must "demonstrate that it is able

and ready" to participate in the process "and that a discriminatory policy prevents it from doing so

on an equal basis."  *General Contractors*, 508 U.S. at 666; *see also Gratz v. Bollinger*, 539 U.S.

244, 262 (2003).

Here, the complaint does not allege any action taken by Plaintiff that supports his claim

that he would seek oral antiviral treatment in the event that he contracts COVID-19.  Instead, the

complaint alleges that Plaintiff "is especially at risk for contracting COVID-19 because he teaches

at Cornell University, which recently had a severe outbreak despite its extensive COVID

protocols."  Dkt. No. 1 at ¶ 14.  This is not the type of evidence of intent that the Supreme Court

has generally relied on when assessing the standing of a plaintiff challenging an equal protection

barrier.  In those cases, the plaintiffs met their burden by alleging (or establishing) some

affirmative action they had taken that supported their stated intent to participate in the challenged

process in the future.  *See Carney*, 141 S. Ct. At 502-03 (examining prior precedent and

concluding that "none of the[] plaintiffs relied on a bare statement of intent alone against the

context of a record that shows nothing more than an abstract generalized grievance.  Rather, each

introduced at least some evidence that, *e.g.*, they had applied in the past, there were regular

opportunities available with relevant frequency, and they were 'able and ready' to apply for

them"); *see also Davis v. Federal Election Commission*, 554 U.S. 724, 734 (2008); *Gratz*, 539

U.S. at 249-50; *Adarand Constructors, Inc. v. Pena,* 515 U.S. 200, 204 (1995); *General*

*Contractors*, 508 U.S. at 668.

Plaintiff does not argue that he has, in fact, pled such evidence.  Rather, Plaintiff argues

that the complaint "need only show a 'substantial risk that the harm will occur'" to meet the

injury-in-fact requirement.  Dkt. No. 47 at 8 (quoting *Driehaus*, 573 U.S. at 158).  Plaintiff asserts

that he met that burden by alleging that he "will almost certainly contract COVID-19 because

'most people are going to get [COVID-19].'"  *Id.* at 9 (quotation omitted).  Plaintiff relies on *Baur*

*v. Veneman*, 352 F.3d 625 (2d Cir. 2003), in which the Second Circuit held that exposure to

"enhanced risk generally qualifies as sufficient injury to confer standing ... where the plaintiff

alleges exposure to potentially harmful products." *Id.* at 634.  Even assuming that the enhanced

risk rule is applicable to the facts of this case,[2] the Court finds that Plaintiff's theory of future

injury is too speculative and attenuated for Article III standing.

"[E]ven in barrier cases, courts must still inquire into whether the injury is 'imminent' or

---

[2] The Second Circuit limited its holding in *Baur* to "the specific context of food and drug safety suits" where the plaintiff is alleging that they will "expos[ed] to potentially harmful products." *Baur*, 352 F.3d at 634 ("In this case, we need not decide as a matter of law whether enhanced risk generally qualifies as sufficient injury to confer standing, nor do we purport to imply that we would adopt such a broad view").  However, the Second Circuit does seem willing to extend this rule beyond just food and drug safety suits involving harmful products. *See, e.g.*, *United States v. Evseroff*, 528 Fed. Appx. 75, 77 (2d Cir. 2013).

'certainly impending.'" *Roberts v. Bassett*, No. 22-CV-710, 2022 WL 785167, *6 (E.D.N.Y. Mar. 15, 2022) (quoting *Malloy*, 861 F.3d at 46-47).  As the Supreme Court made clear in *Clapper v. Amnesty Intern. USA*, 568 U.S. 398 (2013), "'allegations of possible future injury' or even an 'objectively reasonable likelihood' of future injury are insufficient to confer standing."  *McMorris v. Carlos Lopez & Associates, LLC*, 995 F.3d 295, 300 (2d Cir. 2021) (quoting *Clapper*, 568 U.S. at 409-10).  Rather, the "'threatened injury must be certainly impending to constitute injury in fact.'"  *Clapper*, 568 U.S. at 410 (quotation omitted).[3]  The Supreme Court stressed that a "theory of standing, which relies on a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending."  *Clapper*, 568 U.S. at 410.

Here, Plaintiff's "theory of future injury is too speculative to satisfy the well-established requirement that threatened injury must be 'certainly impending.'"  *Id.*  In order to trigger Plaintiff's alleged future harm, the following series of events is required occur: (1) Plaintiff must contract COVID-19; (2) Plaintiff must suffer mild to moderate symptoms (as opposed to being asymptomatic or hospitalized due to severe or critical symptoms), *see* Dkt. No. 1-1 at 2; (3) Plaintiff's treating doctor must conclude that use of oral antiviral treatment is clinically appropriate for Plaintiff, *see id.* at 3; and (4) there must be a shortage in oral antiviral treatment supplies at the time of Plaintiff's sickness that makes it impossible to offer the treatment to all eligible patients, *see* Dkt. No. 1-2 at 1.  In light of the discretion afforded to doctors in recommending treatment, *see Clapper*, 568 U.S. at 414 (noting the reluctance of courts "to endorse standing theories that require guesswork as to how independent decision makers will

---

[3] *Clapper* also recognized that, "[i]n some instances, [the Supreme Court has] found standing based on a 'substantial risk' that the harm will occur, which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm."  568 U.S. at 414 n.5 (quotation omitted). Plaintiff does not allege that they have incurred any costs to mitigate or avoid the alleged harm.

exercise their judgment"); *see also Liberian Community Assn. of Connecticut v. Lamont*, 970 F.3d 174, 185 (2d Cir. 2020), and the current lack of any shortage in oral antiviral treatment supplies, the Court concludes that Plaintiff's theory of future injury is far closer to a "speculative chain of possibilities" than "certainly impending."[4]

Accordingly, Plaintiff cannot satisfy injury in fact requirement of Article III standing and this Court lacks subject matter jurisdiction.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendant's cross motion to dismiss (Dkt. No. 42) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's motions to certify a class (Dkt. No. 33) and for a preliminary injunction (Dkt. No. 34) are **DENIED as moot**; and the Court further

**ORDERS** that all claims against Defendant are **DISMISSED without prejudice**; and the

---

[4] Plaintiff briefly argues that he has suffered emotional and psychological harm because he "has 'a heightened concern when he goes about his daily activities because he knows that he is not automatically eligible for life-saving treatments under the [Guidance] solely because of his race and ethnicity.'" Dkt. No. 47 at 10 (brackets and quotation omitted) (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2211 n.7 (2021) (speculating, in *dicta*, that "a plaintiff's knowledge that he or she is exposed to a risk of future physical ... harm could cause its own current emotional or psychological harm" but taking "no position on whether" such harm "could suffice for Article III purposes")). However, Plaintiff was not "automatically eligible" for oral antiviral treatments before the Guidance was put in place, and people of non-white race or Hispanic/Latino ethnicity did not become "automatically eligible" after its implementation. Everyone—regardless of whether race or ethnicity is considered a risk factor—must still contract COVID-19, have an appropriate level of symptoms, and a doctor must determine oral antivirals are clinically appropriate, before they are eligible for this treatment. Because Plaintiff suffered his alleged emotional harm before the Guidance existed and will continue to suffer it if the Guidance was found unconstitutional, this injury is neither "fairly traceable to the challenged action of the defendant" nor "likely ... [to] be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 560-61.

Court further

     **ORDERS** that the Clerk of the Court enter judgment in defendant's favor, and close this

case; and the Court further

     **ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision

and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  March 25, 2022
       Albany, New York

Mae A. D'Agostino
U.S. District Judge

11